UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| GARRETT LEE TUCKER,<br>    *Plaintiff*,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of the Social Security<br>Administration,<br>    *Defendant*. | Civil No. 1:19-cv-0303-CMH-MSN |

**REPORT AND RECOMMENDATION**

This matter comes before the Court on the parties' cross-motions for summary judgment (Dkt. Nos. 10 and 16). Plaintiff Garrett Lee Tucker seeks judicial review of the final decision of defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, denying his claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423 (the "Act"). Alternatively, plaintiff moves for an order remanding the instant appeal to the Social Security Administration ("SSA") for a new administrative hearing pursuant to § 405(g). For the reasons stated below, the undersigned recommends that plaintiff's Motion for Summary Judgment (Dkt. No. 10) be DENIED, defendant's Cross-Motion for Summary Judgment (Dkt. No. 16) be GRANTED, and defendant's final decision be AFFIRMED.

**I.    Procedural and Factual History**

Plaintiff applied for disability insurance benefits on August 30, 2014, alleging disability beginning March 31, 2012. Administrative Record ("AR") at 179. Plaintiff's application was denied both initially and again upon reconsideration. At plaintiff's request, a hearing was held on October 18, 2017, before Administrative Law Judge ("ALJ") Andrew M. Emerson. *Id.* Both

plaintiff, represented by an attorney, and a Vocational Expert ("VE") testified. *Id.* at 38-69. On March 6, 2018, the ALJ issued a decision finding that plaintiff was not disabled. *Id.* at 16-30. On January 15, 2019, the Appeals Council for the Office of Disability and Adjudication denied plaintiff's request for further administrative review and notified him that the ALJ's decision stood as the Commissioner's final decision. *Id.* at 1-3.

Having exhausted his administrative remedies, plaintiff filed a Complaint (Dkt. No. 1) on March 15, 2019, challenging the ALJ's decision. Plaintiff filed a Motion for Summary Judgment (Dkt. No. 10) on June 17, 2019, to which the Commissioner filed a Cross-Motion for Summary Judgment (Dkt. No. 16) on August 9, 2019, along with a Memorandum in Support of Defendant's Motion for Summary Judgment and In Opposition to Plaintiff's Motion for Summary Judgment (Dkt. Nos. 18 and 19). Accordingly, the parties' motions are ripe for disposition. The relevant period for the instant action is between March 31, 2012, the alleged onset date, and the date last insured, December 31, 2017 ("relevant period").[1] AR at 18. Plaintiff alleged the following impairments: HIV, depression, severe headaches, panic attacks, and anxiety. *Id.* at 71. Below is a summary of the relevant medical evidence, state agency opinion evidence, and testimony from the administrative hearing.

    a.    **Relevant Medical Evidence**

There is a significant amount of medical evidence from the relevant period in the record. Plaintiff has been diagnosed with degenerative disc disease, with chest x-rays showing degenerative changes in the spine, and obesity. AR at 285. He has also been diagnosed with high cholesterol, narcolepsy, and HIV, all of which are controlled with medication. *Id*. at 75, 285, 360, 436, 478, 609, 665, 857. He has chronic headaches, typically feeling pain behind his right eye. *Id*.

---

[1] A claimant must establish disability on or before the date last insured in order to be entitled to disability insurance benefits. 42 U.S.C.A. § 416(i).

at 360, 436. Notably, due to his headaches, plaintiff received a brain MRI in July 2014 that showed no evidence of mass effect or acute ischemia. *Id*. at 458. In a June 2013 examination by Dr. Rienes, plaintiff presented with intact recent and remote memory, judgment, and insight. *Id*. at 287. In September 2013, his affect and mood were described as normal, but Dr. Reines noted that plaintiff indicated some signs of Bell's palsy. However, in an October 2014 examination by a neurologist, these signs were not repeated, and the neurologist described the claimant as awake, alert, and oriented, with intact cognition, normal speech, and normal memory. *Id.* at 436.

In terms of mental health, plaintiff began treatment in August 2014 with psychiatrist Robert Ketcham, who diagnosed plaintiff with major depressive disorder and panic episodes, prescribed medications, and recommended psychotherapy. AR at 862. Dr. Ketchum noted in 2015 that plaintiff "planned and intends to go on a trip to Nashville in May." *Id*. at 862. Dr. Ketcham noted that plaintiff's panic attacks lessened with medication and therapy, and that by 2016, he appeared more conversationally available and less stressed overall. *Id.* at 862-63. Plaintiff told Dr. Ketchum that headaches were his principal problem and that his mood and panic disorder were less problematic. *Id.* at 864.

Plaintiff sought treatment from psychologist Luis Materus starting in December 2015 and continuing until May 2015. During these sessions, plaintiff discussed various situational stressors, such as his difficulty dealing with his roommate and taking care of his mother. AR at 509. He reported that he sometimes had panic attacks, but at other times he stated that he was doing "OK" and had no attacks. *Id*. at 511. He reported that he was "using coping mechanisms" that worked for him, and in his last session, he reported that he had no panic attacks or crying spells since his prior session one month prior. *Id* at 523.

Plaintiff saw psychologist Scott Krysztofiak from June 2015 until October 2015. AR at

518, 535-7. As with Dr. Materus, plaintiff discussed concerns about his mother and his roommate, which were both significant stressors. *Id*. With therapy, plaintiff's panic attacks ceased and anxiety diminished. *Id.* at 703, 709, 758, 779, 794. Dr. Krysztofiak reported that plaintiff was "able to work through stressful situations with little difficulty." *Id*. at 719. Plaintiff also reported that medications were making him less tired, and that he had an increase in energy. He also discussed returning to work, but instead explored possible volunteer opportunities. *Id.* at 746-47, 784. Plaintiff also discussed going out in the evenings, attending concerts, visiting Philadelphia and Richmond, and taking trips to Nashville. *Id*. at 704, 709, 718-19, 721, 737, 759-61, 65, 787-88.

  **b.**  **State Agency Consultants' Opinion Evidence**

In March 2015, state agency expert physician Dr. Orritt assessed the plaintiff's mental residual functional capacity and identified no more than a moderate impairment in any functional domain. AR at 71. Dr. Orritt wrote that plaintiff could manage short, simple, and very familiar or extremely routine procedures with infrequent brief interaction with the public. *Id.* at 75. In October 2015, state agency consultant Dr. Leizer came to similar conclusions, finding that plaintiff could perform simple, unskilled, repetitive tasks with limited social interactions. *AR* at 90.

  **c.**  **Administrative Hearing**

On October 18, 2017, the ALJ heard testimony from plaintiff, appearing with an attorney, and the VE. AR at 26. At the outset, plaintiff's attorney gave an opening statement summarizing the plaintiff's combination of impairments, including his migraines, narcolepsy, HIV, depression, and anxiety. *Id*. at 42.

Plaintiff testified that he has an associate degree and held a job as an assistant bank manager from February of 1992 to March of 2012, which is the only job he has held within the last 15 years. AR at 44. He then relayed some specific facts about his current living situation, such as his

residence in Alexandria, where he has lived for 20 years. *Id.* at 44. He testified that while he has a driver's license, he typically only drives to the grocery store and to doctor's appointments. The plaintiff testified that he does not visit with anyone socially. But, upon questioning by the ALJ, plaintiff did state that he attends concerts, including at crowded venues. *Id.* at 45. He also confirmed that he visits Nashville approximately once a year, "hanging out" with friends, and drove to Philadelphia in the past year for a concert. *Id*. at 46-47.

Plaintiff then described his current medical treatment. Plaintiff sees a psychologist, Dr. Krystzofiak, and a psychiatrist, Dr. Kaplin, regularly. *Id*. at 48. He also sees a neurologist and a primary care physician. *Id*. He also testified that he was taking at least eight medications, including for HIV and to help him sleep. *Id*. at 49.

Plaintiff described various limitations on his functional abilities. He stated he is able to walk for about ten minutes. AR at 50. He stated he can stand for only ten minutes at a time, due to exhaustion. *Id.* at 51. He can lift no more than 20 pounds, perhaps substantially less, gets winded climbing stairs, but has no trouble pushing or pulling objects. *Id*. at 52. He also reported that he had become clumsier in the past year. *Id*. Plaintiff also described mental impairments, such as trouble with concentration and memory. *Id*. at 53. Plaintiff stressed the limitations his headaches placed on him, which occur about two or three times a week. *Id.* at 61. Plaintiff further stated that his anxiety caused "shaking" and brought him "to tears." *Id*. at 54. He stated he had a type of narcolepsy which causes "tiredness" and "exhaustion." *Id*. at 62.

The VE testified next, characterizing plaintiff's prior employment as assistant manager as skilled work at a light exertional level. AR at 64. The ALJ then asked the VE to consider various scenarios involving an individual of the same age, education, and work experience as the plaintiff who "is limited to medium work, can only frequently push and pull objects with both upper

extremities, can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl," "can never climb ladders, ropes and scaffolds," and would need to avoid concentrated exposure to extreme cold, heat, wetness, excessive vibration, hazardous moving machinery and unprotected heights. Further, this individual could only perform simple, routine, repetitive tasks in a low-stress work environment, only occasionally interacting with others ("hypothetical individual"). *Id.* at 64.

First, the ALJ asked the VE if such a hypothetical individual could perform plaintiff's past work as it was actually or customarily performed in the national economy. *Id.* at 64. The VE said that the individual could not do so. *Id.* Second, the ALJ asked the VE to consider whether the same hypothetical individual could perform plaintiff's past work if limited to medium work. *Id.* at 65. The VE responded that such an individual could not do so. *Id.* Next, the ALJ asked the VE to consider whether this hypothetical individual would be able to perform plaintiff's past work if limited to light work. *Id.* The VE responded that such an individual would not be able to perform plaintiff's past work but would be able to perform other positions, including: packer and packaging worker, inspector, and table worker. *Id.* Finally, the ALJ asked whether this hypothetical individual would be able to perform sedentary work. *Id.* at 66. The VE responded that such an individual would be able to perform sedentary positions including quality control worker, finish machine tender, and bench worker. *Id.*

Plaintiff's attorney also questioned the VE. He first asked whether the hypothetical individual as described by the ALJ could maintain employment if he had unscheduled, unpredicted absenteeism at least three times a month. *Id.* at 67. The VE responded that such an individual would not be able to do so. *Id.* Plaintiff's attorney further asked whether the hypothetical individual as described by the ALJ could maintain employment if he had to be non-productive 25 percent of

6

the time due to fatigue, panic attacks, and headaches. *Id.* The VE responded that such a person would be precluded from work. *Id.* at 67. The attorney then asked if such a hypothetical individual could maintain employment if he could not adequately or consistently deal with stressors normally found in the workplace or accept criticism and supervision on the job. *Id.* at 68. The VE answered that such an individual could not maintain competitive employment. *Id*.

## II.     Standard of Review

The Social Security Regulations define "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To meet this definition, the claimant must have a severe impairment that makes it impossible to do past relevant work or any other substantial gainful activity ("SGA") that exists in the national economy. *Id.*; *see also Heckler v. Campbell*, 461 U.S. 458, 460 (1983). Determining whether an applicant is eligible for disability benefits under the SSA entails a "five-part inquiry" that "asks: whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the SSA's official Listing of Impairments]; (4) the claimant can perform [his] past relevant work; and (5) the claimant can perform other specified types of work." *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). Before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), meaning the most that the claimant can do despite his or her physical or mental limitations. C.F.R. §§ 416.920(h), 416.945(a)(1).

In this case, the ALJ found plaintiff not disabled and denied his application for benefits.

AR at 17. Under the first step, the ALJ found that plaintiff did not engage in any SGA from his alleged onset date of March 31, 2012 through December 31, 2017, the date plaintiff was last insured. *Id.* at 18. At step two, the ALJ determined that plaintiff had the following severe impairments: degenerative disc disease, obesity, major depressive disorder, mood disorder, anxiety disorder, and panic disorder. *Id.* Under step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id.* at 19-20.

Before proceeding to steps four and five, the ALJ determined plaintiff's RFC. The ALJ considered plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms, but determined that those statements were not consistent with the objective medical evidence and other evidence in the record. *Id.* at 23. Reviewing the entire record, the ALJ concluded that plaintiff had the RFC to perform light work, except he could frequently push and pull, occasionally climb ramps and stairs, balance, stoop, crouch, or crawl, but never climb ladders, ropes or scaffolds. *Id.* at 22. Furthermore, the claimant must avoid concentrated exposure to extreme heat, cold, wetness, vibration, hazardous moving machinery, and unprotected heights, and could only perform simple, routine, repetitive, low stress work involving only occasional interaction with others. *Id.*

Under step four, the ALJ found that plaintiff was unable to perform any past relevant work. At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in the national economy that he could perform, including: packer, table worker, and inspector. *Id.* at 29. Based on the foregoing analysis, the ALJ concluded that plaintiff was not disabled as defined by the Act. *Id.*

In reviewing a decision of the Commissioner, district courts are limited to determining

whether the Commissioner's decision was supported by substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws*, 368 F.2d at 589.

When evaluating whether the Commissioner's decision is supported by substantial evidence, "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1996). "Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Id.* (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).  If supported by substantial evidence, the Commissioner's findings as to any fact are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Although the standard is high, when the ALJ's determination is not supported by substantial evidence on the record or when the ALJ has made an error of law, the district court must reverse the decision.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In evaluating whether the ALJ made an error of law, the Fourth Circuit applies a harmless error analysis in the context of social security disability determinations. *See Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015). The harmless error doctrine prevents a remand when the ALJ's decision is "overwhelmingly supported by the record though the agency's original opinion failed to marshal that support" and a remand would be "a waste of time." *Williams v. Berryhill*, 2018 WL 851259,

at *8 (E.D. Va. Jan. 18, 2018) (citing *Bishop v. Comm'r of Soc. Sec.*, 583 Fed. App'x 65, 67 (4th Cir. 2014) (per curium)). An ALJ's error may be deemed harmless when a court can conclude on the basis of the ALJ's entire opinion that the error did not substantively prejudice the claimant. *See Lee v. Colvin*, 2016 WL 7404722, at *8 (E.D. Va. Nov. 29, 2016). When reviewing a decision for harmless error, a court must look at "[a]n estimation of the likelihood that the result would have been different." *Morton-Thompson v. Colvin*, 2015 WL 5561210, at *7 (E.D. Va. Aug. 19, 2015) (citing *Shineski v. Sanders*, 556 U.S. 396, 411-12 (2009)).

**III.   Analysis**

Plaintiff argues that the ALJ erred in his assessment of the proper evidentiary weight to give the mental health opinion evidence from (1) the four treating sources of record and (2) the Social Security psychological consultant, Dr. Jobe. Pl. Br. (Dkt. No. 10) 6, 14. Defendant moves for summary judgment on the basis that the ALJ's decision is supported by substantial evidence on the record. *See generally* Def. Opp'n (Dkt. No. 18). For the reasons that follow, the undersigned recommends denying plaintiff's Motion for Summary Judgement, granting defendant's Cross-Motion for Summary Judgment, and affirming the ALJ's decision.

   **a.   Mental Health Opinion Evidence of Treating Sources**

Plaintiff first alleges that the ALJ erred by not giving adequate weight to the mental health opinion evidences of treating sources. The ALJ gave modest weight to the opinions of treating physicians Dr. Mateus, Dr. Krysztofiak, and Dr. Ketchum. The ALJ gave minimal weight to the opinion of treating physician Dr. Kaplin.

The ALJ has the exclusive duty to evaluate the medical opinions in the record and is not required to accept any medical opinion regarding the nature and severity of a claimant's impairment, including a treating source's opinion, as controlling. 20 C.F.R. § 404.1527; *see also*

*Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). The Fourth Circuit explained that "if a [treating] physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. Courts "must defer to the ALJ's assignments of weight unless they are not supported by substantial evidence." *Dunn v. Colvin*, 607 Fed. Appx. 264, 271 (4th Cir. 2015). In addition, on the question of disability itself, the federal regulations state that "[the SSA] will not give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(3). Accordingly, the ALJ must consider a variety of factors—such as the length and extent of treatment as well as the consistency of the opinion "with the record as whole"—to determine the appropriate weight. *Id.* at § 404.1427(b)-(c).

Here, plaintiff argues that all four of the treating physicians' opinions were improperly discounted by the ALJ merely because they were based on subjective symptomatic complaints and without providing "good reasons" for the weight assigned. Pl. Br. (Dkt. No. 10) 9. However, plaintiff overestimates what is required of the ALJ. The Social Security Administration's regulations do not require an express discussion of each factor for weighing an opinion. *See Baxter v. Astrue*, 2012 WL 32567, at *6. (D. Md. Jan. 4, 2012). Moreover, courts "generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up 'specious inconsistencies.'" *Dunn v. Colvin*, 607 Fed.Appx. 264, 267 (4th Cir. 2015). Material inconsistencies, on the other hand, are a compelling basis to give little weight to a medical opinion. *Burch v. Apfel*, 9 F. App'x 255, 260 (4th Cir. 2001) (unpublished).

Here, the inconsistencies at issue are far from specious. First, the issue here is not solely that plaintiff's physicians relied on subjective complaints, but that these complaints conflicted with the record as a whole and with the treating sources' own prior observations. For example,

11

Dr. Mateus's medical assessment form opined that plaintiff had poor attention, concentration, ability to deal with work stress, and would miss three days of work per month. AR at 382. However, as the ALJ noted, this report stands in contrast with other evidence in the record. *Id.* at 27. In his actual sessions with plaintiff, Dr. Mateus noted plaintiff's improvements, for example that plaintiff was normalizing in his moods and was planning a vacation to Nashville. *Id.* at 516. The ALJ noted that Dr. Ketchum's report presented similar problems as Dr. Mateus's. *Id.* at 27. Dr. Ketchum's own treatment notes paint a different picture from his assessment on the medical assessment form, for example, noting plaintiff's planning ability, as evidenced by an ability to plan a trip to Nashville. *Id.* at 862. Dr. Ketchum's opinion was also accorded less weight insofar as it stated that plaintiff could not work, a determination that is reserved for the Commissioner. 20 C.F.R. § 404.1527. Presented with such inconsistencies, there was no "other realistic course for the ALJ to take" other than to give these opinions less than controlling weight. *Burch*, 9 F. App'x at 260.

Dr. Krysztofiak's opinion was similarly accorded modest weight not because he relied solely on subjective complaints, but because these subjective complaints conflicted with the evidence from his own examinations. AR at 27. For example, the ALJ notes that the plaintiff was "euthymic" (a relatively neutral or contented mood) on the date Dr. Krysztofiak filled out the form. *Id*. The plaintiff argues that citing a single session has no necessary relation to the plaintiff's functional capacity. But this session was no fluke – the record shows ample evidence of other sessions where Dr. Kyrsztofiak described plaintiff's mood as euthymic. AR at 519-523, 702-711, 713-716, 718-728, 730-748.

In addition, as the government observes, there are substantial inconsistencies *between* these four medical opinions as well. For example, while Dr. Kaplin reported that plaintiff possessed

"poor/no" ability to adjust to a job, make performance adjustments, and make personal social adjustments, Drs. Mateus, Kyrsztofiak, and Ketcham rated plaintiff mostly good or fair in these categories. AR at 382-3, 388-9, 538-39. Similarly, the physicians disagreed regarding whether plaintiff demonstrated anxiety-related symptoms. 391-92, 385-86, 535-36. These are far from "dredged up 'specious inconsistencies'" and there is therefore no basis to disturb the ALJ's decision as to the weight afforded to these treating source opinions. *Dunn*, 607 Fed.Appx. at 267 (4th Cir. 2015).

      **b.    Dr. Jobe's Mental Status Evaluation**

Plaintiff also argues that the ALJ erred assigning moderate weight to the mental health opinion evidence of Social Security psychological consultant Dr. Jobe. Pl. Br. (Dkt. No. 10) 14. Plaintiff's argument is unpersuasive.

First, it is important to note that the ALJ did not disregard Dr. Jobe's opinion entirely. Rather, after careful consideration, he granted it moderate weight. In giving Dr. Jobe's opinion only moderate weight, the ALJ presented adequate reasoning, *i.e.*, that the limitations "that were mentioned appear to manifest based upon the claimaint's reports rather than limitations that Dr. Jobe personally identified as a physician." AR at 26. The plaintiff argues that this is insufficient because the ALJ failed to point to specific evidence to support his conclusion that Dr. Jobe relied heavily on subjective reports. But the ALJ's reasoning, while succinct, is not flawed. Courts "must defer to the ALJ's assignments of weight unless they are not supported by substantial evidence." *Dunn v. Colvin*, 607 Fed. Appx. 264, 271 (4th Cir. 2015). Here, the ALJ's conclusion is consistent with the record as a whole. For example, the ALJ notes that plaintiff's prognosis was described by Dr. Jobe as "poor." AR at 26. And yet, contemporaneous medical records show that plaintiff had improved with medication and therapy. *Id.* at 836-37. This also contrasts with her finding that

plaintiff was pleasant, awake, alert, fully oriented, logical, goal oriented, appropriate, with normal mood and congruent affect. *Id.* at 378. Dr. Jobe reported that plaintiff told her he had hopeless feelings, crying spells, anger, and anxiety. *Id.* at 26, 377. Around the same time, plaintiff told Dr. Ketchum he was looking forward to an upcoming trip. AR at 862. Plaintiff told Dr. Jobe he had "maybe" one friend, but he simultaneously told Dr. Ketcham he was planning and intending to go on a trip to Nashville, an annual trip with friends that he had been going on for 20 years. *Id.* at 26, 836-837. The evidence in the record that contrasts with plaintiff's subjective reports is substantial, and the undersigned finds no basis to disturb the ALJ's assignment of moderate weight to the opinion evidence of Dr. Jobe.

**IV.     Recommendation**

For the reasons set forth above, the undersigned recommends that plaintiff's Motion for Summary Judgment (Dkt. No. 10) be DENIED, that defendant's Cross-Motion for Summary Judgment (Dkt. No. 18) be GRANTED, and that the final decision of defendant be AFFIRMED.

**V.     Notice**

The parties are notified as follows. Objections to this Report and Recommendation must be filed within fourteen (14) days of service on you of this Report and Recommendation. Failure to timely file objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

/s/
Michael S. Nachmanoff
United States Magistrate Judge

January 13, 2019
Alexandria, Virginia